The Town of Springport, Respondent, *v.* The Teutonia Savings Bank et al., Appellants.

The Same, Respondent, *v.* The German Uptown Savings Bank et al., Appellants.

The Same, Respondent, *v.* The Franklin Savings Bank, Appellant.

In actions brought to restrain defendants from transferring, and to compel the cancellation of bonds issued by plaintiff under the act of 1869 (chap. 314, Laws of 1869), authorizing it to subscribe for stock of the C. L. R. R. Co., it appeared that revocations of consents of tax payers of the town, executed and acknowledged with the same formalities as the consents, were delivered to the assessors while they had the consents before them, and before they had acted upon them, and that the residue were insufficient to constitute the majority required by the statute; also that the assessors disregarded the revocations and wrongfully made and filed the statutory affidavit. *Held*, that the omission to file the revocations did not render them ineffectual; that their delivery made them effectual and withdrew from the assessors the authority to make the affidavit.

Also, *held*, that such omission did not estop the plaintiff; that, assuming the tax payers, who signed consents and then revoked them, could be estopped by their acts or omissions, they could not estop the whole body of tax payers.

Also, *held*, that a tender before the commencement of the action, of the stock received for the bonds was not necessary; that defendants could not require a tender to themselves, as they were not received from them and they had no title thereto. If they had any right to them (as to which *quære*), all they could claim was an equitable right of subrogation on canceling their bonds; if the claim was that the stock should have been surrendered to the company or canceled, that was a matter between it and plaintiff, and the rights of the latter as against defendants did not depend upon the prior adjustment of the matter.

*It seems* that in an action against a third party, whose title depends upon a contract claimed by plaintiff to have been rescinded, defendant cannot set up a want of tender by plaintiff, to the other party to the contract, of a return of what plaintiff received.

Also, *held*, that the affidavit of the assessors was not conclusive, but only *prima facie* evidence of the facts therein stated.

(Argued February 3, 1881; decided March 8, 1881.)

These were appeals from judgments of the General Term of the Supreme Court, in the fourth judicial department, entered upon orders made August 17, 1880, modifying by striking out allowances for costs, and affirming, as modified, judgment, entered on reports of a referee.

These actions were brought to have certain bonds, issued by plaintiff to pay for subscriptions for stock of the Cayuga Lake Railroad, authorized by chapter 314, Laws of 1869, as amended by chapter 152, Laws of 1870, delivered up and canceled, and to restrain defendants from transferring them.

It is reported on a former appeal in 75 N. Y. 398.

The referee found in substance in each case that a majority of the tax payers of the town of Springport, owning more than one-half of the taxable property of the town, duly executed and acknowledged consents in writing that the commissioners for said town, appointed under said act, might borrow, on the credit of the town, $100,000, and issue its bonds for the purposes of the act; that after the presentation of the consents to the assessors and before they met to act thereon, revocations in writing, signed by certain of the tax payers who had signed the consents, and executed and acknowledged in the same manner as the consents, were delivered to the assessors; but that the assessors, being of the opinion that, under the statute, they were not authorized to take cognizance of said revocations, without regard to them, made their affidavit required by statute to authorize the issue of bonds, and filed the same with the consents in the town clerk's office, and that they were filed in the office of the county clerk, but that said revocations were not filed; that rejecting the tax payers who signed said revocations, there was not a consent in writing of a majority of the tax payers of the town owning more than one-half of the property assessed; that the railroad commissioners of the town issued $100,000 of bonds to the railroad company, receiving in exchange that amount of stock, which bonds were purchased by defendants in good faith and for value; that plaintiff demanded a return of the bonds, but did not offer to surrender or transfer the stock.

*Jno. E. Parsons* for appellant. There was no complete revocation of the consents. (*People ex rel. Yawger* v. *Allen*, 52 N. Y. 538; *Howland* v. *Eldridge*, 43 id. 457.) A partnership as between partners may be dissolved, and yet either partner has a continuing right as to strangers to bind his co-partners. (*Wardwell* v. *Haight*, 2 Barb. 549; *Van Eps* v. *Dillaye*, 6 id. 244; *City Bk. of Brooklyn* v. *McChesney*, 20 N. Y. 240.) The authority of an agent may be revoked as between him and his principal, and yet the principal be bound by the agent's subsequent acts in favor of third persons. (*Farmers and Mechanics' Bk.* v. *Stickney*, 8 L. R. 161; *Lefler* v. *Field*, 50 Barb. 407; *Edwards* v. *Shafer*, 49 id. 291, *Morey* v. *Webb*, 58 N. Y. 350; *Beard* v. *Kirk*, 11 N. H. 397; *Fellows* v. *Hartford & N. Y. S. Co.*, 38 Conn. 197; Story's Eq., § 470 *et seq.*) It was necessary that the revocation should be filed. (*Town of Venice* v. *Woodruff*, 62 N. Y. 462.)

*George W. Wingate* for receiver appellant. A tax payer who had once given his consent had no further right in the matter. (*People* v. *Mitchell*, 35 N. Y. 555.) There is no remedy provided for the correction of errors into which the assessors may fall in respect to matters referred to their determination. (*Howland* v. *Eldridge*, 43 N. Y. 457.) Although the authority of an agent, as between himself and his principal, be revoked, yet the latter is bound by the agent's subsequent acts in favor of third parties, who have not been notified of such revocation. (*Farmers and Mechanics' Bank* v. *Stickney*, 8 Law, 161; Story's Equity, § 470 *et seq.*; *Storey* v. *Webb*, 58 N. Y. 350; *Lefler* v. *Field*, 50 Barb. 407; *Edwards* v. *Schaffer*, 49 id. 291.) The failure of the town to tender to the defendants the stock for which these bonds were issued is a bar to the prosecution of the action. (Story's Equity Jur., §§ 1520–1524; *Tripp* v. *Cook*, 26 Wend. 143, 160; *Smedberg* v. *More*, id. 238, 247; *Hazel* v. *Dunham*, 1 Hall, 655, 658; *Browne* v. *Howe*, 2 Barb. 586, 595; *Taylor* v. *Fleet*, 4 id. 95, 103; *Bench* v. *Sheldon*, 14 id. 66, 71; *Munn* v. *Worrall*, 16 id. 509, 583; *Greenleaf* v. *Mumford*, 19 Abb. Pr. 469, 476; *Stanley* v. *Gadsby*, 10 Pet. 521.)

*W. F. Cogswell* for respondent.   The affidavit of the assessors is not conclusive evidence of the fact that a majority of the tax payers have given their consent to mortgage the town. (*People ex rel. Martin* v. *Brown*, 55 N. Y. 180; *Horton* v. *The Town of Thompson*, 71 id. 513; *This Plaintiff* v. *These Defendants*, 75 N. H. 397–406; *The People* v. *Bachullor*, 53 N. Y. 128.)   The revocations should have been deducted from the consents by the assessors, in determinating the question whether the requisite number of consents had been procured. (*People ex rel. Yawger* v. *Allen*, 52 N. Y. 538; 75 id. 397.)   The claim of the defendants that the plaintiff cannot succeed because it did not tender the stock issued by the railroad company to the commissioners at or before the commencement of the action is untenable. ( *Weismer* v. *Village of Douglas*, 64 N. Y. 91; 75 id. 397–407; *Schermerhorn* v. *Talman*, 14 id. 93, 129, 142.)   The certificate was never anything but evidence of the ownership of a proportionate part of the property and franchises of the company. (*Arnold* v. *Ruggles*, 1 R. I. 105; Angell on Corporations, § 562.)   The railroad commissioners are not the town, or even officers of the town, and their acts or omission to act in no way affected it. (*Horton* v. *Thompson*, 71 N. Y. 513.)

Rapallo, J. The only points raised on the present appeal which were not expressly passed upon on the former appeal (75 N. Y. 397) are : that the revocations of the consents of the tax payers of the town were ineffectual because not filed in the office either of the town or county clerk, and that there was no tender of the stock which had been issued by the railroad company, or of the cancelment of that stock, and no offer either to cancel or surrender that stock when the demand was made for the surrender of the bonds.   The objection that the revocations were not filed is untenable.   They were executed and acknowledged with the same formalities as the consents, and delivered to the assessors while those officers had the consents before them and before they had acted upon them or passed upon their sufficiency.   Their effect was to annul the consents

revoked, and the residue being insufficient to constitute the majority required by the statute, the assessors wrongfully made and filed the affidavit, and the condition upon which the power of the railroad commissioners to issue the bonds wholly depended, was not complied with. That condition was the consent of the requisite majority of the tax payers and not merely the making of the affidavit. The revocations were complete when delivered, to the assessors, before they had acted upon the consents. The consents had not been filed when the revocations were delivered, and the filing of the consents after such revocation of them was wrongful. The delivery of the revocations to the assessors was the proper mode of making them effectual, and not the filing of them with the town or county clerk. Their effect was to withdraw from the assessors the authority to make the statutory affidavit and to file it with the consents, thus revoked. On this very ground the proceedings of the assessors in making and filing the affidavit and consents, in disregard of the revocations, were adjudged void and set aside by this court on *certiorari* in the case of *People ex rel. Yawger* v. *Allen et al. Assessors et al.* (52 N. Y. 538). The filing of the revocations was not necessary to render them effectual.

The appellants insist, however, that inasmuch as the consents were directed by law to be filed, and they were filed, the revocations ought also to have been filed, so as to give notice to parties who might rely upon the consents on file, that they had been revoked; and the omission to file such revocations is relied upon as some sort of estoppel. There is no evidence in this case that any one acted on the faith of the consents on file, but aside from that, the difficulty is that the filing of the affidavit and consents was wholly unauthorized, and the proceeding void; that the tax payers who gave the consents originally and then revoked them are not the only persons now contesting the validity of the proceeding and of the bonds, nor do they represent all the contestants. Assuming that they could, by their acts or omissions, estop themselves, they could not estop the others. The real contestants are the whole body of

tax payers of the town, embracing those who never gave any consents and whose property could not, under the law, be burdened by these bonds against their will, except by the valid consent of the requisite majority; if such consent was not given, these contestants cannot be estopped by the omissions of other persons, acting without their authority, from showing the fact. A voter might do acts which, on general principles applicable to private transactions, ought to estop him from disputing the validity of his own vote, but that would not preclude others from demanding its rejection.

A tender of the stock before the commencement of the action was not necessary. In the first place when the town repudiated the authority of the railroad commissioners to issue the bonds, and demanded of the defendants that they be surrendered, the certificates of the stock were in the hands of the railroad commissioners. Furthermore, the appellants do not distinctly inform us to whom they claim that the stock should have been tendered. If the claim is that it should have been tendered to the defendants, the answer is that it was not received from them and they had no title thereto. If they had any right in respect to it (a point which we do not now decide), the most they could have claimed was an equitable right of subrogation, on canceling their bonds. If this right existed, the proper mode of protecting it was by a provision in the decree, unless the defendants at an earlier stage consented to surrender the bonds and demanded the subrogation. If the claim is that the stock should have been returned to the railroad company or canceled, that was a matter between the plaintiff and the company, and the plaintiff's right, as against the defendants, did not depend upon the previous adjustment of that matter. The claim of the plaintiff was that the bonds were absolutely void, and if the result of their being so adjudged was to entitle the railroad company to a cancellation of the stock which it had issued therefor, the company, and not the defendants, was the party to enforce that right. This is not the case of the rescission of a contract, but if it were dependent upon the same principles, the point would not be available. Even in such cases

a third party, whose title depends upon a contract claimed to have been rescinded, cannot set up a want of tender by the plaintiff to the original party, of the return of what the plaintiff had received under the original contract. For instance, when a sale of goods is rescinded by the vendor, on the ground of fraud, and he reclaims the goods from a transferee of his vendee, the transferee cannot defend on the ground that the securities received by the vendor from the original vendee have not been tendered back to him. (*Kinney* v. *Kiernan*, 49 N. Y. 164, 172.) In such a case the title to the securities reverts to the original vendee, on the rescission, but the right to insist upon their return is his, and not that of his transferee of the goods. (*Stevens* v. *Austin*, 1 Metc. 558; *Pearse* v. *Pettis*, 47 Barb. 276.) Even, therefore, if the principles governing the rescission of contracts were applicable to this case, they would not permit the defendants to set up the right of the railroad company to a return of its stock. There are still further grounds upon which it can be claimed that the town could not obligate itself by any ratification of the transaction, or become liable upon these bonds in any other manner than by means of proceedings strictly conforming to the provisions of the statute.

The point is again urged on this appeal that the affidavit of the assessors was conclusive. This point was clearly involved and adjudicated upon in our former decision. If the affidavit was conclusive, that judgment could not have been rendered, for the bonds could not have been shown to be invalid. Our view was that the statute declared that the affidavit should only be *prima facie* evidence. The proof of the consents is declared to consist of the affidavit of the assessors. This is the proof required to justify the railroad commissioners in the first instance in issuing the bonds. But, when the act speaks of what shall be the effect of the affidavit as evidence in court, it declares that a certified copy thereof shall be presumptive evidence of the facts therein stated. It surely cannot be that the only reason for thus limiting the effect of the certified copy is to guard against a variance between the original and the copy. Nothing is said about the effect of the original as evidence, and the act seems

to contemplate that the genuineness of the signatures would have to be proved in case of contest, if the provision making the affidavit evidence of the fact were not inserted, and it, therefore, makes a certified copy of such affidavit presumptive evidence of the facts therein stated. This limitation of its effect being expressed, we would not be justified in construing the act so as to make the original affidavit conclusive by mere implication. The case of *People ex rel. Yawger* v. *Allen et al. Assessors* (52 N. Y. 538, 542) draws the distinction between the effect of this affidavit and of the judgment of a county judge under other bonding acts. We can only repeat what was said on the first appeal, that the intent of the statute on which this case depends, appears to have been to lodge the power of authorizing the bonding of the town in the majority of the tax payers, and not in the assessors.

The judgments should be affirmed, with costs..

All concur, except DANFORTH, J., taking no part.

Judgments affirmed.